UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MIRNA PAGOADA and LUIS GONZALO         :
ZELAYA, on behalf of themselves and all others    :
similarly situated,                                                    :
                                                                              :
                                        Plaintiffs,                  :
                                                                              :          **COMPLAINT**
                   -against-                                        :
                                                                              :
CENTRAL YETEV D'SATMAR MEAT INC. d/b/a     :
GLATT KOSHER MEAT & POULTRY, SATMAR    :          **COLLECTIVE ACTION**
MEAT OF CONG. YETEV LEV, INC. d/b/a          :
SATMAR MEATS & TAKE OUT, CENTRAL YETEV  :
LEV D'SATMAR MEAT I d/b/a SATMAR MEAT    :
WOODBOURNE and MOSHE BROWN,              :
                                                                              :
                                        Defendants.              :
------------------------------------------------------------------------X

Plaintiffs Mirna Pagoada and Luis Gonzalo Zelaya (collectively, "Plaintiffs"), on

behalf of themselves and all others similarly situated, by their attorneys Pechman Law

Group PLLC, complaining of Defendants Central Yetev D'Satmar Meat Inc. d/b/a

Glatt Kosher Meat & Poultry, Satmar Meat of Cong. Yetev Lev, Inc. d/b/a Satmar

Meats & Take Out, Central Yetev Lev D'Satmar Meat I d/b/a Satmar Meat

Woodbourne and Moshe Brown (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.        This action is brought to recover unpaid overtime compensation pursuant

to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and New York Labor

Law § 190, *et seq*. ("NYLL").  This action is also brought to recover spread-of-hours pay

and other monies as required by the NYLL.

2.        Defendants own and operate several meat markets: Glatt Kosher Meat &

Poultry ("Glatt Kosher"), located at 684 Myrtle Avenue, Brooklyn, NY 11205; Satmar

Meats & Take Out ("Satmar Meats"), located at 285 Lee Avenue, Brooklyn, New York

11211; and Satmar Meat Woodbourne ("Woodbourne"), located at 433 Route 52, Woodbourne, New York 12788.

3.      Plaintiffs and other kitchen workers employed by Defendants consistently worked more than forty hours per week, but Defendants failed to pay Plaintiffs and other kitchen workers statutorily required overtime wages at one and a half (1 ½) their regular hourly rate for all hours worked over forty per workweek.

4.      Defendants also did not pay Plaintiffs and other kitchen workers spread-of-hours pay when the length of their workday exceeded ten hours and failed to furnish to Plaintiffs and other kitchen workers annual wage notices and weekly wage statements.

5.      Plaintiffs seek compensation for unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and attorney's fees and costs pursuant to the FLSA and NYLL.

## JURISDICTION

6.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

7.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, as Glatt Kosher Meat & Poultry and Satmar Meats & Takeout are located in the Eastern District of New York.

## THE PARTIES

### Plaintiff Mirna Pagoada

8.      Mirna Pagoada ("Pagoada") resides Brooklyn, New York.

2

9.      Pagoada was employed at Glatt Kosher from approximately October 2009 until October 11, 2015.

**Plaintiff Luis Gonzalo Zelaya**

10.     Luis Gonzalo Zelaya ("Zelaya") resides in Melbourne, Florida.

11.     Zelaya was employed at Glatt Kosher from approximately June 2009 through approximately September 2015.

**Defendant Central Yetev D'Satmar Meat Inc.**

12.     Central Yetev D'Satmar Meat Inc. is a New York corporation that owns and operates Glatt Kosher.

13.     Defendant Central Yetev D'Satmar Meat Inc. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

14.     Defendant Central Yetev D'Satmar Meat Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

15.     Central Yetev D'Satmar Meat Inc. has an annual gross volume of sales in excess of $500,000.

**Defendant Satmar Meat of Cong. Yetev Lev, Inc.**

16.     Satmar Meat of Cong. Yetev Lev, Inc. is a New York corporation that owns and operates Satmar Meats.

17.     Defendant Satmar Meat of Cong. Yetev Lev, Inc. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18.     Defendant Satmar Meat of Cong. Yetev Lev, Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by any person.

19.     Satmar Meat of Cong. Yetev Lev, Inc. has an annual gross volume of sales in excess of $500,000.

**Defendant Central Yetev Lev D'Satmar Meat I**

20.     Defendant Central Yetev Lev D'Satmar Meat I is a New York corporation that owns and operates Satmar Meat Woodbourne.

21.     Central Yetev Lev D'Satmar Meat I is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22.     Central Yetev Lev D'Satmar Meat I has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

23.     Central Yetev Lev D'Satmar Meat I Satmar Meat of Cong. Yetev Lev, Inc. has an annual gross volume of sales in excess of $500,000.

**Defendant Moshe Brown**

24.     Defendant Moshe Brown ("Brown") is an owner of Glatt Kosher, Satmar Meat, and Woodbourne.

25.     Brown is sued individually in his capacity as an owner, officer and/or agent of Glatt Kosher, Satmar Meats, and Woodbourne.

26.     Brown is named as the CEO of Satmar Meat of Cong. Yetev Lev, Inc. in the New York State Department of Corporations database.

27.     Brown exercises sufficient control over Glatt Kosher, Satmar Meats, and Woodbourne's operations to be considered Plaintiffs' employer under the FLSA and NYLL.

28.     At all times material herein, Brown had the authority to hire and fire employees and established and exercised authority regarding the pay practices at Glatt Kosher, Satmar Meats, and Woodbourne.

29.     Brown regularly confers with each location's managers regarding the employment practices and management of Glatt Kosher, Satmar Meats, and Woodbourne.

30.     Brown makes final decisions about menu items and employment practices at Glatt Kosher, Satmar Meats, Woodbourne.

31.     Brown visits Glatt Kosher and Satmar Meats periodically and oversees the work done by employees.

**Glatt Kosher, Satmar Meats, and Woodbourne Are Joint Employers**

32.     Glatt Kosher, Satmar Meats, and Woodbourne have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

33.     Brown is an owner of Glatt Kosher, Satmar Meats, and Woodbourne.

34.     Glatt Kosher, Satmar Meats, and Woodbourne share a common food and drink menu.

35.     Glatt Kosher, Satmar Meats, and Woodbourne interchange and share employees.

36.     There is common purchasing for Glatt Kosher, Satmar Meats, and Woodbourne and food product is regularly shared between the locations.  For example kitchen workers at Glatt Kosher are often asked to prepare food to be taken to Satmar Meats and Woodbourne to be sold there.  Products from Satmar Meats are also transported to Glatt Kosher and Woodbourne.  Ingredients are also interchanged

between the businesses.  Also, food products made by Plaintiffs at Glatt Kosher during the summer were transported to Woodbourne.

## COLLECTIVE ACTION ALLEGATIONS

37.     The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons (i.e., kitchen workers) who are current and former employees of Glatt Kosher, Satmar Meats, and Woodbourne since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

38.     The FLSA Collective consists of approximately thirty similarly situated current and former employees of Glatt Kosher, Satmar Meats, and Woodbourne who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime and other wages.

39.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA.  This policy and pattern or practice includes, *inter alia*, the following:

a.  failing to pay employees the applicable overtime rate for all hours worked in excess of forty per workweek;

b.  failing to pay employees spread-of-hours compensation of one hour's pay at the minimum wage for each day in which their workday spanned more than ten hours; and

c.  failing to keep accurate records of hours worked by employees as required by the FLSA and NYLL.

40.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and the NYLL.

41.     Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damage to Plaintiffs and the FLSA Collective.

42.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and locatable through Glatt Kosher, Satmar Meats, and Woodbourne's records.  These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

PLAINTIFFS' FACTUAL ALLEGATIONS

**Mirna Pagoada**

43.     Throughout her employment, Defendants did not pay Pagoada overtime compensation.

44.     Throughout her employment, Pagoada worked for Defendants as a food preparer at Glatt Kosher.

45.     Pagoada prepared food to be sold at all locations.

46.     Throughout her employment, from October to May, Pagoada worked from approximately 8:30 a.m. to approximately 6:00 p.m., Monday through Thursday. On Friday, Pagoada worked from approximately 8:30 a.m. to approximately 3:00 p.m., and Sunday, from approximately 8:30 a.m. to approximately 6:00 p.m., for a total of approximately fifty-four hours per week.

47.     However, each year, from June to September, Pagoada regularly worked Monday through Wednesday from approximately 8:30 a.m. to approximately 12:30 a.m.; Thursday from approximately 8:30 a.m. to approximately 6:00 p.m.; Friday from approximately 8:30 a.m. to approximately 3:00 p.m.; and Sunday from approximately

8:30 a.m. to approximately 6:00 p.m., for a total of approximately seventy-three and one half (73 ½) hours per week.

48.     Pagoada worked long hours from June to September because a large amount of the food prepared at Glatt Kosher during those months was sent to Woodbourne for students at summer camp.

49.     Pagoada was paid $9.00 per hour at the start of her employment with Defendants through the end of 2009.

50.     Pagoada received a raise of $1.00 approximately every six months and was receiving $16.00 per hour at the time of her termination on October 11, 2015.

51.     Pagoada was paid the same hourly rate for all hours worked each week, including all hours worked over forty.

52.     Defendants failed to compensate Pagoada at the overtime rate of one and a half (1 ½) times her regular hourly rate for all hours she worked in excess of forty each workweek.

53.     Defendants failed to pay Pagoada spread-of-hours pay of an additional hour's pay at the minimum wage for every day in which her shift spanned more than ten hours.

54.     Defendants failed to furnish Pagoada with annual wage notices.

55.     Defendants failed to furnish Pagoada with weekly statements of wages detailing, *inter alia*, hours worked, rates paid, and gross wages.

**Luis Gonzalo Zelaya**

56.     Throughout his employment, Defendants did not pay Zelaya overtime compensation or spread-of-hours pay.

57.     Zelaya worked for Defendants as a food preparer at Glatt Kosher.

58.     Zelaya prepared food to be sold at all locations.

59.     Throughout his employment, Zelaya's scheduled hours varied, but he worked an approximate total of sixty hours per week.

60.     Zelaya worked long hours from June to September because a large amount of the food prepared at Glatt Kosher during those months was sent to Woodbourne for students at summer camp.

61.     Zelaya was paid $10.00 per hour at the start of his employment with Defendants through the end of 2009.

62.     Zelaya received a raise of $1.00 approximately every six months and was receiving $15.00 per hour at the time of his termination.

63.     Zelaya was paid the same hourly rate for all hours worked each week, including all hours worked over forty.

64.     Defendants failed to pay Zelaya overtime compensation for hours worked in excess of forty each week.

65.     Defendants did not pay Zelaya spread-of-hours pay of an additional hour's pay at the minimum wage for every day in which his shift spanned more than ten hours.

66.     Defendants failed to furnish Zelaya with annual wage notices.

67.     Defendants failed to furnish Zelaya with weekly statements of wages detailing, *inter alia*, hours worked, rates paid, and gross wages.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

68.     Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

69.     Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq.*, and employed Plaintiffs and the FLSA Collective.

70.     Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times their regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

71.     Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

72.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages for all the hours they worked in excess of forty in a workweek.

73.     Defendants did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

74.     Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

75.     Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

76.     Defendants are employers within the meaning of NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and other kitchen workers.

77.     Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and other kitchen workers one and one (1½) half times the regular rate of pay for all hours worked in excess of forty per workweek.

78.     Defendants failed to pay Plaintiffs and other kitchen workers the overtime wages to which they were entitled under the NYLL.

79.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and other kitchen workers overtime wages.

80.     Due to Defendants' willful violations of the NYLL, Plaintiffs and other kitchen workers are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## THIRD CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

81.     Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

82.     Defendants willfully failed to pay Plaintiffs and other kitchen workers additional compensation of one hour's pay at the minimum hourly wage rate for each day in which their shift spanned more than ten hours.

83.     By Defendants' failure to pay Plaintiffs and other kitchen workers spread-of-hours pay, Defendants willfully violated the NYLL Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10, 146-1.6.

84.     Due to Defendants' willful violations of the NYLL, Plaintiffs and other kitchen workers are entitled to recover unpaid spread-of-hours pay, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

## FOURTH CLAIM
### (New York Labor Law – Wage Theft Prevention Act)

85.     Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

86.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.  From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

87.     The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

88.     Throughout Plaintiffs' and other kitchen workers' employment with Defendants, Defendants paid Plaintiffs and other kitchen workers without providing a wage statement to each person accurately listing that person's: regular rate of pay, overtime rate or rates of pay; the number of regular hours worked, the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

89.     In violation of NYLL § 191, Defendants failed to furnish to Plaintiffs and other kitchen workers at the time of hiring, whenever there was a change to Plaintiffs' or other kitchen workers' rates of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance

with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

90.     Defendants failed to furnish Plaintiffs and other kitchen workers with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

91.     Due to Defendants' violation of NYLL § 195(1), Plaintiffs and other kitchen workers are entitled to recover from Defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

92.     Due to Defendants' violation of NYLL § 195(3), Plaintiffs and other kitchen workers are entitled to recover from defendants liquidated damages of $250 per day that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

a. authorizing the issuance of notice at the earliest possible time to all kitchen workers who were employed by Defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b. declaring that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

c. declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

d. declaring that Defendants violated the notice provisions of the NYLL and WTPA;

e. declaring that Defendants' violations of the FLSA and NYLL were willful;

f. awarding Plaintiffs and the FLSA Collective unpaid overtime wages;

g. awarding Plaintiffs and the FLSA Collective damages for unpaid spread-of-hours compensation;

h. awarding Plaintiffs and the FLSA Collective liquidated damages pursuant to the FLSA and the NYLL;

i. awarding Plaintiffs and the FLSA Collective statutory damages as a result of Defendants' failure to furnish accurate wage statements and annual wage notices pursuant to the NYLL;

j. awarding Plaintiffs pre- and post-judgment interest under the NYLL;

14

k.      awarding Plaintiffs and the FLSA Collective reasonable attorneys'
fees and costs pursuant to the FLSA and the NYLL; and

l.      awarding such other and further relief as the Court deems just and
proper.

Dated:    New York, New York
          January 23, 2017

                                        PECHMAN LAW GROUP PLLC


                                        By:
                                            Louis Pechman
                                            Laura Rodriguez
                                            488 Madison Avenue - 11th Floor
                                            New York, New York 10022
                                            (212) 583-9500
                                            pechman@pechmanlaw.com
                                            rodriguez@pechmanlaw.com
                                            *Attorneys for Plaintiffs and the FLSA
                                            Collective*